[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2010
JOHN LEY
CLERK

_____

Nos. 09-11762 & 09-11778

_____

D. C. Docket Nos. 06-02549-CV-JEC-1,
07-01220-CV-JEC-1

RICHARD V. HARRISON,

Plaintiff-Appellant,

versus

INTERNATIONAL BUSINESS MACHINES (IBM) CORP.,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(May 11, 2010)

Before TJOFLAT, WILSON and EBEL,[*] Circuit Judges.

PER CURIAM:

---

[*]Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

Richard V. Harrison, a black male from the Jamaican West Indies, filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 3(a), and under the Civil Rights Act of 1866, 42 U.S.C. § 1981, against his employer International Business Machines ("IBM"), for discrimination and retaliation. The district court granted IBM summary judgment on all claims. Appellant, proceeding *pro se*, appeals the district court's entry of summary judgment and argues that the district court and magistrate judges erred in not recusing themselves.

## I.    FACTS

In his first amended complaint, Appellant alleged that IBM discriminated against him based on his race, gender, and national origin. He also contended that IBM, specifically his supervisor, Andrew Vodopia, retaliated against him for engaging in protected activity.

Appellant's second complaint was based on actions reported in his third Equal Employment Opportunity Commission ("EEOC") charge, which was filed after the first complaint. Counts 2, 3, 5, and 6 of Appellant's second complaint alleged various claims of discrimination relating to his poor performance review and termination. Counts 1 and 4 alleged that IBM retaliated against Appellant by giving him poor performance reviews and then terminating his employment.

The district court granted partial summary judgment on the discrimination claims in Counts 2, 3, 5, and 6 from Appellant's second complaint because Appellant did not allege or describe discrimination based on race, sex, or national origin in his third EEOC charge. Consequently, the district court found that Appellant did not exhaust his administrative remedies. The district court then granted consolidated summary judgment on the remaining claims in both complaints.

Appellant raises four issues on appeal. First, he contends that the district court and magistrate judges should have recused themselves. Second, he asserts that the district court erred by granting IBM's motion for partial summary judgment. Third, he argues that there was direct evidence of Title VII violations. Fourth, Appellant contends that the district court erred in granting IBM summary judgment on his remaining claims of discrimination and retaliation.

## II. DISCUSSION

### A. Recusal of District Court and Magistrate Judges

Title 28, Section 455(a) of the United States Code instructs a federal judge to disqualify herself if "[her] impartiality might reasonably be questioned," and 28 U.S.C. § 455(b) requires disqualification when, *inter alia*, the judge "has a personal bias or prejudice concerning a party."

3

We find that Appellant has not demonstrated impartiality or personal bias on the part of either the district court judge or the magistrate judge. Neither judge erred in failing to recuse themselves.

B.    *Partial Summary Judgment Order*

We review a district court order granting summary judgment de novo, viewing all of the facts in the record in the light most favorable to the non-moving party. *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1161–62 (11th Cir. 2006).

Filing of an EEOC discrimination charge is a prerequisite to judicial review of such a claim. *See Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam). "In light of the purpose of the EEOC exhaustion requirement, we have held that a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1280 (quotation omitted). Because we are "extremely reluctant to allow procedural technicalities to bar claims brought under Title VII[,] . . . the scope of an EEOC complaint should not be strictly interpreted." *Id.* (quotation and alteration omitted).

Liberally construed, the discrimination claims raised in the second complaint were "reasonably related" to the third EEOC charge. *See Wu v. Thomas*, 863 F.2d

1543, 1547 (11th Cir. 1989). The discrimination claims based on sex, national origin, disparate treatment, and hostile work environment raised in the second complaint were inextricably intertwined with the retaliation claims in the third EEOC charge because they all related to events surrounding his poor performance review and termination. Therefore, Appellant exhausted his administrative remedies.

However, we affirm the district court's partial summary judgment on other grounds.[1] We agree with the magistrate judge's report and recommendation that Appellant has not shown any pretext on the part of IBM with regard to the retaliation claim in the second complaint. Although the partial summary judgment order did not discuss pretext, the discrimination claims in the second complaint are inextricably intertwined with the retaliation claims in the second complaint. The magistrate judge's finding of a lack of pretext in regards to the retaliation claims is therefore equally applicable to the discrimination claims raised in the second complaint.

C.    *Direct Evidence of Discrimination*

Title VII prohibits employment-related discrimination on the basis of race,

---

[1]"[W]e may affirm the district court's decision on any adequate ground, even if it is other than the one on which the court actually relied." *Parks v. City of Warner Robins, Ga.*, 43 F.3d 609, 613 (11th Cir. 1995).

color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Title VII also provides a cause of action for employees who encounter discrimination in retaliation for filing a Title VII complaint. 42 U.S.C. § 2000e-3(a). "A plaintiff in a Title VII action may attempt to show this discrimination by offering . . . direct . . . . evidence." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (citation omitted).

Appellant points to three discussions among IBM employees as direct evidence of discrimination. We agree that this is not direct evidence because "no . . . . racially discriminatory bias can be inferred from [Appellant's proffered evidence]." (Final Report and Recommendation and Order, D.E. 131 at 44).

D.    *Retaliation and Discrimination Claims*

In the absence of direct evidence, Title VII discrimination and retaliation claims may be proven using circumstantial evidence and applying the burden shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817, 1824–25 (1973). *See Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009). The plaintiff has the initial burden of proving a prima facie case, the burden then shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse actions taken against the plaintiff, and finally, the burden shifts back to the plaintiff to provide evidence that the

employer's legitimate reasons were mere pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802–04, 93 S. Ct. at 1824–25.

Appellant alleges adverse job actions arising from discrimination when: (1) he was not selected for one of three Account Service Representative ("ASR") positions; (2) he was "blackballed" for a financial analyst position; (3) his availability date was misrepresented; (4) he was denied the opportunity to transfer to other positions because of unwarranted poor performance evaluations; and (5) he was deemed ineligible for transfer to another position within IBM. Appellant's retaliation claims are based on being: (1) given work assignments set up to make him fail; (2) denied a transfer to another position at IBM; (3) given unwarranted poor performance evaluations; and (4) terminated.

All of the job transfers were lateral transfers. Appellant has not provided any evidence that being denied these transfers "resulted in a serious and material change in the terms, conditions, and privileges of employment." *Webb-Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, 1033 (11th Cir. 2008). Therefore, Appellant has failed to prove the denial of transfers resulted in an adverse employment action. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). Appellant has not established a prima facie case of discrimination with regards to being denied a transfer.

7

As for the remaining claims in the first and second complaint, IBM had legitimate, nondiscriminatory reasons for the alleged adverse actions and Appellant has failed to meet his burden to show pretext on the part of IBM.

To show pretext, the plaintiff must present sufficient evidence "to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citation omitted). Conclusory allegations, without more, are insufficient to show pretext. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (quotation omitted). Instead, the plaintiff must meet the proffered reason "head on and rebut it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

Appellant offers no explanation that directly rebuts IBM's reasons for taking adverse action against Appellant. IBM's legitimate, nondiscriminatory reasons for its actions were that Appellant refused to complete work assignments, ignored parts of his assignments, refused to accept new assignments, engaged in altercations with coworkers, and refused to give any updates on the progress of his work. Appellant has not explained why these were not the true reasons for his poor performance reviews, denial of transfers, and eventual termination. Appellant simply cannot rebut the logical conclusion that Vodopia and other supervisors at

IBM took the actions they did because they honestly believed Appellant to be a poor employee.

Lastly, Appellant's contention that he was "blackballed" from another financial analyst position is based on an e-mail from Vodopia to another manager. However, because it is a job performance e-mail, it does not qualify as an adverse employment action. *See Davis*, 245 F.3d at 1240 (holding that job performance memoranda rarely constitute adverse employment actions). The district court did not err by granting summary judgment to IBM on Appellant's claims of discrimination and retaliation.

## III.   CONCLUSION

Accordingly, upon review of the record and consideration of the parties' briefs, we deny Appellant's recusal claim, affirm the partial summary judgment on different grounds, and affirm the summary judgment on all remaining claims.

**AFFIRMED.**