[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 23, 2011
JOHN LEY
CLERK

No. 10-14345
Non-Argument Calendar

_____

D.C. Docket No. 2:09-cv-00864-WMA

TIMOTHY BLUE,

Plaintiff-Appellant,

versus

DUNN CONSTRUCTION COMPANY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 23, 2011)

Before TJOFLAT, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Timothy Blue appeals following entry of summary judgment in favor of the

defendant, Dunn Construction Company, Inc. ("Dunn"), on his employment

discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) and -3(a), and under 42 U.S.C. § 1981.[1]  He argues that the district court erred by finding that his delayed promotion did not constitute an adverse employment action and that he failed to demonstrate Dunn's proffered non-discriminatory reason for delaying his promotion was pretextual.  He also argues that the district court erred by finding that he failed to show that the reason Dunn gave for subsequently demoting him was pretextual.  Upon review of the record and consideration of the parties' briefs, we affirm.  We address each contention in turn.

I.

"This court reviews a district court's grant of summary judgment de novo, applying the same legal standards used by the district court."  Galvez v. Bruce, 552 F.3d 1238, 1241 (11th Cir. 2008).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Swisher Int'l., Inc. v. Schafer, 550 F.3d 1046, 1050 (11th Cir. 2008).  "A mere 'scintilla' of evidence supporting

---

[1]  Blue offers no argument with respect to his retaliation claim and his discrimination claim based on the denial of assistance to perform his duties.  Those claims are thereby waived, and we decline to address them.  See Mize v. Hall, 532 F.3d 1184, 1189 n.3 (11th Cir. 2008).

2

the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Brooks v. Cnty. Comm'n, 446 F.3d 1160, 1162 (11th Cir. 2006).

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). Under 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Claims of race discrimination are cognizable under both Title VII and § 1981, and they "have the same requirements of proof and use the same analytical framework." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Accordingly, we address Blue's Title VII claim with the understanding that the same analysis applies to his § 1981 claims.[2]

A plaintiff may establish a Title VII claim through the introduction of direct evidence of discrimination or circumstantial evidence that creates an inference of

---

[2] Even though Blue's delayed promotion claim was time-barred under Title VII because he filed his EEOC charge more than 180 days after he was promoted, it was nevertheless cognizable under § 1981 because he filed his charge within four years of his promotion. See Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 448 (11th Cir. 1993).

3

discrimination.  Hinson v. Clinch Cnty., Ga. Bd. of Educ., 231 F.3d 821, 827 (11th

Cir. 2000).[3]  In an employment discrimination case such as this one, where the

plaintiff relies on circumstantial evidence, we apply the McDonnell-Douglas[4]

burden-shifting framework.  Crawford v. Carroll, 529 F.3d 961, 975-76 (11th Cir.

2008).  Under this analysis, the plaintiff can establish a prima facie case of

disparate treatment by showing that: (1) he is a member of a protected class, (2) he

was subject to an adverse employment action, (3) his employer treated similarly

situated employees who were not members of his protected class more favorably,

and (4) he was qualified to do the job.  Burke-Fowler v. Orange Cnty., 447 F.3d

1319, 1323 (11th Cir. 2006).  If the plaintiff satisfies the four elements of a prima

facie case of disparate treatment, and the employer proffers a legitimate,

non-discriminatory reason for its employment action, the plaintiff must then show

that the reason "is a pretext for unlawful discrimination."  Id.

   We have determined that an "adverse employment action" includes

"termination, failure to hire, or demotion."  Crawford, 529 F.3d at 970.  An

employer's conduct falling short of those actions "must, in some substantial way,

---

[3]   Because Blue does not challenge the district court's finding that no direct evidence of race discrimination existed, the only dispute is whether Blue presented sufficient circumstantial evidence to avoid summary judgment on his delayed promotion claim under § 1981.  See Pennington v. City of Huntsville, 261 F.3d 1262, 1265 (11th Cir. 2001).

[4]   McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).

4

alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee." Id. (quotations and alterations omitted). With regard to the level of substantiality required, the plaintiff must demonstrate that he "suffered a serious and material change in the terms, conditions, or privileges of employment." Id. at 970-71 (quotation omitted) (emphasis in original).

It is uncontested that Dunn's practice was to place an employee who was being considered for a promotion in an "acting foreman" role for an indeterminate trial period, during which the employee would be evaluated for suitability. An acting foreman is not a salaried employee but is assured of forty hours' worth of wages regardless of weather conditions, a benefit not given to regular workers. Acting foremen are also entitled to overtime wages, which not even permanent foremen are awarded. Blue remained as an acting foreman for fifteen months and, due to overtime, earned an annual wage higher than that of a permanent foreman. He claims that he was subjected to an adverse employment action because Dunn unreasonably delayed his promotion to permanent foreman on account of his race. In support, Blue presented evidence that two white acting foremen were promoted sooner than he was, one after serving in the acting role for nine months and the other, by Blue's accounting, for less than a year.

This circuit has not yet determined whether a delayed promotion can satisfy the adverse employment action prong. See Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). Dunn did not have a company policy about the length of the evaluation period, meaning that Blue could not show unreasonable delay in promoting him, based on a deviation from company policy. The length of the trial period depends on the employee's performance as acting foreman, and Blue was an acting foreman for only a few months longer than the two white acting foremen. Thus, like the Pennington court, we have "considerable doubt about whether [Blue] can satisfy . . . the adverse employment action prong." Id.

Even assuming arguendo that he has established a prima facie case, he did not rebut Dunn's non-discriminatory reason for the delay. A plaintiff will withstand summary judgment by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005). "[A] reason cannot . . . be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752, 125 L.Ed.2d 407 (1993) (emphases in original).

6

As noted by the district court, non-discriminatory reasons supporting Dunn's decisions to delay the promotion are: (1) Blue's 2006 performance evaluation, which reflected poor performance in three-out-of-five major responsibility categories and showed that he failed to score "Good" or "Excellent" in any of ten overall categories; (2) the fact that the two white acting foremen who were promoted more quickly both scored higher than Blue on their performance evaluations; and (3) Blue's repeated difficulty in managing his crew, leading his supervisors to keep him as an acting foreman in the hopes of improvement. If anything, Dunn's decisions to delay promotion seem focused on ensuring that Blue be given an adequate chance to improve his performance and avoid being demoted, rather than seeking to indefinitely prevent a further promotion on account of his race. Blue failed to rebut these non-discriminatory reasons for delaying his promotion. The district court properly granted summary judgment on this claim.

## II.

Next, Blue contends that Dunn subsequently promoted him to permanent foreman, only to demote him back to a regular asphalt worker on account of his race. As discussed above, a plaintiff may establish a prima facie case of discriminatory demotion by showing that (1) he belongs to a protected class, (2) he

was subject to an adverse employment action, (3) the employer treated similarly situated employees not of the protected class more favorably, and (4) he was qualified for the job. Burke-Fowler, 447 F.3d at 1323. If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for demotion. Id. If the employer identifies legitimate reasons, the burden shifts back to the plaintiff to establish that the employer's articulated reason is a mere pretext for discrimination. Id. The plaintiff "must meet [the proffered reason] head on and rebut it." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

If a plaintiff attempts to show pretext by comparing his own treatment to the employer's treatment of similarly situated employees outside of his class, his comparators must be "similarly situated in all relevant aspects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Employees are "similarly situated" if they are involved in the same or similar conduct and are disciplined in different ways. Rioux v. City of Atlanta, 520 F.3d 1269, 1280 (11th Cir. 2008) (quotation omitted). We have held that a "comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004).

Assuming arguendo that the district court properly concluded that Blue

8

established a prima facie case of discrimination, Blue still fails to present evidence that could lead a reasonable factfinder to conclude that Dunn's stated reasons for his demotion—poor performance and failure to control his crew—were pretext for race discrimination. Specifically, Blue did not show that Dunn's proffered reasons were false. See Hicks, 509 U.S. at 515, 113 S. Ct. at 2752. The person who demoted Blue was the same one who had previously promoted him. Also, the evaluation of Blue's 2007 performance contained negative remarks about the number of call-backs on his projects, his inability to focus on quality, the low amount of work his crew accomplished in a typical day, his inability to supervise his crew, and the crew taking advantage of his friendly relations with them. Total ratings of less than "acceptable performance" in three of the five major job responsibilities reflected little improvement from 2006. The only other foreman with scores as low as Blue's was Tim Fallin, who is white and was demoted in 2007, then fired in 2008. The evaluation, which Blue signed after discussing it with his supervisors, noted that Blue had "not significantly improved in 2007. [Dunn] will put someone helping [Blue] with his crew and monitor whether this helps. If it does not, then we have no choice but to make a change and place [Blue] back as an operator." Blue does not dispute that, in December 2007, General Superintendent Billy Joe Nichols and Blue's immediate supervisor,

9

Wayne Snell, who is African American, verbally warned him that he faced demotion if he did not take better charge of his crew.  Given all this evidence, Blue failed to show that Dunn's proffered reason for demotion contained "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions . . . that a reasonable factfinder could find them unworthy of credence."  Jackson, 405 F.3d at 1289.[5]

Furthermore, Blue failed to show pretext by comparing his own treatment to Dunn's treatment of similarly situated white employees.  See Holifield, 115 F.3d at 1562.  His performance scores were worse than his comparators'.  And while Blue's comparators had criminal records, had failed drug tests, or had failed to

---

[5]     Blue also argues that the real reason Dunn demoted him was because a member of Blue's crew damaged a building with paving equipment.  See Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1194 (11th Cir. 2004) (holding that evidence of pretext can include where an employer gives "shifting" reasons for an employment decision).  As the district court noted, such an accident by itself "would not normally be cause for the demotion of a Foreman."

To support this contention, Blue offered the testimony of Snell and Matt Albright.  Snell did discuss the job-site accident at the same time he discussed Blue's demotion, but when Snell was directly asked why Blue was demoted, Snell said, "Because I don't think he was – he didn't take charge of his crew was the main thing.  As far as running his crew hisself.  Making all the shot calls and driving and pushing.  He wasn't – he wasn't doing that."

One of Blue's crew members had told Albright that Blue was demoted because of the accident.  Even if the district court could consider this hearsay, see Pritchard v. S. Co. Servs., 92 F.3d 1130, 1135 (11th Cir. 1996), it does not help Blue's case because it merely establishes what one of Blue's own crew members thought about Blue's demotion.  It does not provide evidence of why Blue's supervisors demoted him.  See Steger v. General Electric Co., 318 F.3d 1066, 1079 (11th Cir. 2003) (holding that "statements made by nondecisionmakers" do not demonstrate discriminatory intent).

10

wear their uniforms, none of them had been evaluated as failing to control their crew or producing poor quality work. The "quantity and quality of the comparator's misconduct [must] be nearly identical [to the plaintiff's] to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). Here, Blue's comparators were not charged with the same kind of misconduct that he was.

We do not analyze "whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999). Since there was no unlawful animus, the district court properly granted summary judgment on this claim.

**AFFIRMED**.[6]

---

[6] Appellant's motion to file reply brief out of time is GRANTED.